CALKIN v. THE STATE, on the relation of HAMPTON.

The publication of a statute in newspapers, without the direction or author-
ity of the general assembly, is not sufficient to give it effect, as required
by the state constitution.

ERROR, to Johnson District Court.

Information in the nature of a quo warranto, against Asa
Calkin, for unlawfully holding the office, and exercising the du-
ties of director, in the first school district of Iowa City township.
By an agreed statement of facts, filed in the district court, on
the 24th of June, 1847, it appears that Calkin had been
holding the office from the first Tuesday of April previous, and
had been exercising the duties thereof, by virtue of an election
authorized by an act of the general assembly of the state,
passed January 24, 1847. Upon the trial below, the defend-
ant pleaded this election in answer to the information; and to
this plea, the prosecuting attorney demurred. The demurrer
was sustained by the court, on the ground that the statute
under which the election was held, had not been published as
required by the fourth article and twenty-seventh section of the
state constitution.

A. Calkin, pro se. There is but one question presented to
the court in this case. Was the act in force at the time of the
election?

It is not contended that the law had been published in
pamphlet form, and distributed prior to that time. Still we
contend that the constitution and laws of the state, relative to
the publication of the laws, had been virtually and substan-
tially complied with. The law had been published and gene-
rally circulated throughout the state, long prior to that time.
The provisions of that law were as well and generally under-
stood then, as at the present time. The law had been publish-
ed in the public newspapers, printed in Iowa City, under and
by the direction of the secretary of state, who by the laws of
the state has supervision of the publication and distribution of

the laws ; and copies of it were sent by him into every county in the state ; and the law was received and acted upon by the people at large, as being in full force.   And it is believed that a contrary decision would be most ruinous in its effects upon the common schools throughout the state ; inasmuch as schools have been established under that law, and are generally in a flourishing condition.

*C. Bates,* for the state.   Whether the act in question was in force at the time of the election, is a fact that the court will notice *ex officio.*   " The existence of public acts must be tried by the judges, who are to inform themselves in the best manner they can."   1 Coke on Lit., 28, n. 16.

The constitution of this state declares that, " No law of the general assembly, of a public nature, shall take effect until the same shall be published and circulated in the several counties of this state, by authority.   If the general assembly shall deem any law of immediate importance, they may provide that the same shall take effect by publication in newspapers in the state."

Under the provision of the constitution, it is clear that the act could not take effect until after it had been published and distributed by authority.

It is admitted that this act was published prior to that time, in the Iowa Capital Reporter and Iowa Standard, two newspapers published at Iowa City, but without authority.

No shadow of authority, direct or implied, from the general assembly, can be found to justify this publication.   There is nothing in the act itself authorizing its publication in newspapers, though it does provide that this act shall take effect from and after its publication.

That the general assembly understood the constitution, and intended no law to take effect by publication in newspapers, except by express legislative provision to that effect, appears by a " joint resolution concerning the taking effect of acts public and private," approved February 24, 1847.   (See laws of that year, p. 202.)

As a farther evidence of the intention of the general assembly, in relation to the act in question, and their construction of the constitution, reference may be had to the acts passed at the same session, and it will be seen that not less than forty-two of the acts contain each a special provision for their taking effect in newspapers.     These acts extend through the entire session, commencing with the first one passed.

When publication and distribution of the laws are named in the constitution and acts ; it is meant that they shall be published and distributed according to the established method, in pamphlet or book form.

The secretary of state, by the second section of the act in relation to his duties, (Laws of 1847, p. 30,) is required to furnish the printers authorized to print the laws, with all laws and resolutions, and " cause to be printed at the end of each volume of the laws, so printed, his certificate, that the foregoing acts and resolutions are truly copied from the original rolls in his office."

The said secretary, in pursuance of this law, printed at the end of the laws and resolutions, his certificate, which bears date, May 1, 1847; and this proves that said act could not have been published and distributed in this manner, until after this time, and consequently could not have been in force on the first Tuesday in April, unless the voluntary publication by two newspapers, could have breathed it into life, and given it force and effect, contrary to the express letter of the constitution and will of the general assembly.

*Opinion by* WILLIAMS, C. J.    This case is here, by agreement of parties, filed on record in this court.    The plaintiff in error seeks to reverse the judgment of the district court of Johnson county, ousting him from the office of school director of the first school district in Iowa City township, Johnson county, which office he had been exercising since the first Tuesday of April, 1847.

The facts of the case are fully set forth in the agreed statement of the parties, and present but one question for decision in this court, viz.:

"Was the act of the legislature of Iowa, relating to common schools, approved January 24, 1847, in force on the first Tuesday of April, 1847?"

In adjudicating the question here presented, the court is directed by the facts admitted, and in proof before it, and by the constitution and laws of this state, which we think clearly and satisfactorily determine the question.

The constitution of this state provides, that " no law of the general assembly, of a public nature, shall take effect until the same shall be published and circulated in the several counties of this state, by authority. If the general assembly shall deem any law of immediate importance, they may provide that the same shall take effect by publication in newspapers in the state."

It is conceded here, and sufficiently before this court in legal form, that the law, by virtue of which the respondent claims to hold and exercise the office of school director, was not " published and circulated in the several counties of this state, by authority," until the first day of May, 1847; that the election for school director was had on the first Tuesday of April, 1847; and that he had exercised the duties of the office since the first Tuesday in April, 1847. Farther, the school law in question is clearly of a public nature. Thus he was elected, and in the performance of the duties of the office for one month before the law had been " published and circulated," as required by the constitution of the state. The proceeding to an election, and qualification of the officer, with his assumption of official duty under the provisions of the law, was clearly giving effect to it; and without the previous publication and circulation, by authority, was directly prohibited by the constitution. Without proceeding to argue the propriety of notifying the people fully of the provisions contained in laws by which they are to be governed, particularly here, where all understand and appreciate it, we merely say, on this part of the case, that a compliance with the terms of the constitution was necessary to give life, motion, energy, and effect to the law.

The plaintiff in error claims that he is sustained in holding the office of school director, and should be protected from the ouster, because some of the newspapers of the state published the law; and the notice of its passage and provisions was thus made public. This brings us to the latter clause of the constitutional provision before cited.

When and how is notice of the enactment and approval of a law to be given, so that the same may take effect, otherwise than by "publication and circulation in the several counties of the state?" Clearly, when the law is deemed of immediate importance. By whom deemed of immediate importance? The general assembly. In such case, so determined by them, they may provide that the same shall take effect by publication in newspapers in the state. Here, the general assembly is to judge of the necessity and propriety of this special mode of publication. They, only, are authorized to provide for the notice, as to the particular enactment, which may be of immediate importance. The constitution is the supreme law of the land. The general assembly of the state, as well as others in office, who may be legitimately called and qualified to make or execute the laws, are bound by its requirements. This, or any other law of a public nature, must be published, by authority, as by the constitution is required. The power "to deem any law of immediate importance, and provide for the publication thereof in newspapers in the state," is vested in the general assembly alone. A failure by that body to make such provision could not vest any other functionary of state, or citizen, with authority to publish such a law, so that the same would be vital, and take effect, and render proceedings under it legally valid. In the case here under consideration, it is clear that, at the time of the election to the office, and the assumption of the exercise of its duties and privileges by the plaintiff, the law had not been "published and circulated in the several counties of this state, by authority," nor had any provision been made by the general assembly for its publication, according to the express terms of the constitution. To say that a publication of the law, by

some person or persons, other than the general assembly, without authority from that body, would be proper and legal, would be to nullify the constitution, and tend to confusion and irresponsibility in a matter of grave and vital importance to the public. The legislature is the representative embodiment of the sovereignty of the people ; to it is intrusted the law-making power, involving the endurance and general welfare of the community, and to it, therefore, has the constitution wisely given the right and power to provide for an emergency, such as obviously arose under the provisions of the law in question.

The 47th section of the act, (a) by virtue of which the plaintiff claims to hold the office of director, provides that the law "shall take effect and be in force from and after its publication." This, legitimately understood and construed, can only mean and intend such publication as is prescribed by the constitution, where a law shall not be deemed of immediate importance by the general assembly. This court, with the explicit terms of the constitution before it, cannot presume that any other publication was intended, when no special provision is contained in the law, or elsewhere, to authorize such presumption. Indeed, the general assembly, on the 24th day of February, one month after the approval of the school law in question, at the same session, passed resolution No. 21, Pamphlet Laws of Iowa, page 202, which is as follows :

"Resolved, That all acts of a public nature shall take effect from and after their publication and circulation in the several counties in this state, by authority, except such acts as contain special provisions for their taking effect by publication in newspapers in the state, which shall take effect accordingly." By the adoption of this resolution, the legislature has fully recognized and promulged the spirit of the constitution, and shown their understanding and appreciation of its provisions in this matter. In view of the whole case, without anticipating or adverting to consequences which might accrue from the illegal assumption and exercise of powers, under a law involving in its

(a) Laws of 1847 p. 135.

execution so many interests both of a private and public nature. This court is of opinion that the act of the legislature of Iowa, relating to common schools, entitled " An act supplemental and amendatory to ' An act to establish common schools,' " approved January 16, 1840, and which was approved January 24, 1847, was not published, as required by the constitution of the state, so as to take effect, and was not in force on the first Tuesday in April, 1847. The judgment of the district court of Johnson county, ousting and excluding Asa Calkin from the office of director in the first school district in Iowa City township, Johnson county, is affirmed.

Judgment affirmed.